UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROWENA K. CROWE and          )
ROBERT H. CROWE,             )
                             )
      Plaintiffs,            )
                             )
v.                           )          CIV. ACT. NO. 1:21-cv-210-TFM-C
                             )
JOHNSON & JOHNSON and        )
ETHICON, INC.,               )
                             )
      Defendants.            )

## MEMORANDUM OPINION AND ORDER

Now pending before the Court is the *Defendants' Motion for Summary Judgment on the Statute of Limitations* and accompanying brief (Docs. 90, 91, filed 12/9/21).[1] Having considered the motion, response, reply, and sur-reply, the evidentiary submissions in support of the motion, and the relevant law, the Court finds Defendants' motion for summary judgment (Doc. 90) is due to be **GRANTED** for the reasons articulated below.

### I.   PARTIES AND JURISDICTION

Plaintiffs Rowena K. Crowe ("Mrs. Crowe") and Robert H. Crowe ("Mr. Crowe") (collectively, "Plaintiffs") assert several claims against Defendants Ethicon, Inc. and Johnson & Johnson (collectively "Defendants" or "Ethicon"). *See* Doc. 1; Doc. 10 at 5-32; Doc. 58-3 (MDL - Amended Short Form Complaint).

This Court has original jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332

---

[1] Also pending is another motion for summary judgment which was originally filed in the MDL on May 9, 2019 and then transferred to this court. While portions of that motion (Doc. 62), brief (Doc. 63), and response (Doc. 71) are specifically referenced in this opinion, the motion is ultimately rendered moot by the ruling on the statute of limitations motion for summary judgment.

(diversity jurisdiction).  Plaintiffs contested venue, but this matter was ultimately transferred to this Court.  *See* Doc. 39.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

On May 24, 2007, Mrs. Crowe presented to Dr. Robert C. Brown's office as a new patient and reported a four-year history of vaginal protrusion, pelvic pressure, urinary frequency, and incontinence.  Doc. 91-1 at 2.  Dr. Brown and Dr. Angela McCool [2] are both gynecologists who practiced at Brown & McCool OBGYN.  Doc. 92-1 at 6.   On June 13, 2007, a urodynamic study was performed on Mrs. Crowe and treatment options such as a mesh repair were discussed.  Doc. 91-2.  On July 11, 2007, Mrs. Crow gave written consent to Dr. McCool-Pearson to implant the Prolift Pelvic Floor Repair System ("Prolift") and the TVT-Obturator ("TVT-O").  Doc. 91-3.  The Prolift includes a pre-cut "Nonabsorbable Prolene Soft Mesh" implant and a set of instruments to facilitate mesh implant placement.  Doc. 92-4.  The TVT-O is a single patient use procedure kit consisting of one piece of Prolene polypropylene mesh tape and a set of instruments to facilitate mesh implant placement.  Doc. 92-5.  On July 17, 2007, Dr. McCool-Pearson performed surgery on Mrs. Crowe at Thomas Hospital in Fairhope, Alabama.  Doc. 91-4.  Dr. McCool-Pearson implanted Prolift to repair her pelvic organ prolapse and TVT-O to treat her stress urinary incontinence.  Docs. 91-4, 91-5.  Mrs. Crowe states that she experienced injuries for the first time within a year after the July 17, 2007 implant surgery.  C*ompare* Doc. 91-6 at ¶ 6 *with* Doc. 92 at ¶ 11 (stating Mrs. Crowe testified she began to experience her pain in 2010).  Mrs. Crowe states that she experienced horrific pelvic pain, pain during sexual intercourse, infections, back and leg pain,

---

[2] Defendants and Plaintiffs both note that Dr. Angela McCool is now Dr. Angela Pearson.  *See* Docs. 91 at ¶ 4, 92 at ¶ 4.  The Court will address her as Dr. McCool-Pearson, consistent with the name used for her deposition.  Doc. 92-1, Ex. 1.

and urinary retention because of the Ethicon mesh products.  *Id*.  Mrs. Crowe states that her pain during sexual intercourse (dyspareunia), her inability to engage in sexual intercourse, and her constipation began in 2010.  Doc. 91-7 at 4.  Dr. Bobby L. Shull and Dr. Erin T. Carey provide testimony that is consist with Mrs. Crowe beginning to experience pain in 2010.  Doc. 91-8 at 6 - 8; Doc. 91-9 at 22; Doc. 91-10 at 4.  On August 5, 2010, Mrs. Crowe saw Dr. Brown and allegedly complained of pain in the left groin that started a few months ago and expressed her concern that the pain she was experiencing may be related to her Prolift and TVT-O implants.  Doc. 91-12 at 2.  Dr. Brown noted the left side of the mesh was tighter than the right side and that releasing the mesh on the left side was a possibility.  *Id*.  Dr. Brown also testified that at this point it was not clear if the mesh was tighter or if Mrs. Crowe was having a muscle spasm.  Doc. 92-2 at 16.

After Dr. Brown performed a pelvic exam on Mrs. Crowe, he informed her that he thought she had a herniated disc and wanted her to get an MRI of her spine.  *Id*.; Doc. 92-8 at 21-22.  Mrs. Crowe underwent an MRI and DEXA bone scan which showed that Mrs. Crowe had a herniated disc.  Dr. Brown recommended Mrs. Crowe visit Dr. James West, an orthopedic in Mobile.  Doc. 92-2 at 16; Doc. 92-8 at 21-22.  On August 23, 2010, Mrs. Crowe visited Dr. West at the Orthopedic Group in Mobile.  Doc. 92-9.  Despite Dr. West prescribing medications, therapy, and epidurals for Mrs. Crowe's lumbar herniation left L5-S1 with neural foraminal encroachment, her pain was not alleviated.  Accordingly, Mrs. Crowe underwent microdiscectomy surgery of her left L5/S1 on September 28, 2010 at Mobile Surgery Center.  Docs. 92-10, 92-11.

On December 14, 2010, Mrs. Crowe visited Dr. Brown again concerning her pelvic pain that she asserts began 2 weeks prior and had been progressively worsening.  Dr. Brown noted to consider possible release of mesh from left side as they previously discussed.  Doc. 91-9 at 9.  During a healthcare appointment on January 5, 2011, Mrs. Crowe complained of pelvic pain,

urinary frequency, lower back pains, and vaginal and rectal pressure.  Doc. 91-15 at 2.  On January 12, 2011, Dr. McCool-Pearson recorded that Ms. Crowe should be treated for depression and that she might need an evaluation and a diagonal laparoscopic colpopexy, which is a surgical procedure to suspend the vagina from the front of the tail bone using a material like synthetic mesh or native tissue.  Doc. 91-16 at 4.   On November 9, 2011, Mrs. Crowe reported vaginal spotting and pain.  Mrs. Crowe allegedly asked Dr. Brown if her TVT-O was causing her vaginal pain, groin pain, and stomach pain and allegedly asked for the name of the manufacturer of the mesh.  Dr. Brown discussed the Prolift mesh's FDA advisory in detail.  Doc. 91-18 at 2.  On May 24, 2012, Mrs. Crowe visited Dr. Brown concerning her continued lower abdominal pain and allegedly asked, "Does the mesh have anything to do with her pain and what if you release it? [D]oes it have metal in it?"  Doc. 91-19 at 2.  Dr. Brown noted that surgery for mesh release may cause more pain for now.  On June 29, 2012, Mrs. Crowe returned to Dr. Brown and reported she was still experiencing abdominal pain.  During the examination Dr. Brown noted "pain on sacrum around sacral nerves no vaginal pain on mesh etc. can't even feel mesh."  Doc. 92-12 at 2.  Dr. Brown recommended that Mrs. Crowe consider visiting Dr. West or Dr. Leslie Rush, a physical medicine and rehab specialist, to evaluate her sacral nerves and numbness.  *Id.* at 4.

On July 11, 2012, Dr. Brown performed a hysterosonogram, a minimally invasive procedure to visualize the inside of the uterus with ultrasound, for Mrs. Crowe.  Following the hysterosonogram, Mrs. Crowe experienced a lot of bleeding after tissue samples were obtained, which she allegedly attributes to the mesh.  Doc. 92-8 at 12.  On July 24, 2012, Mrs. Crowe and Dr. Brown discussed the results from her hysterosonogram.  Dr. Brown noted that Mrs. Crowe's vaginal bleeding had stopped and recommended that she visit a gastrointestinal doctor for her continued abdominal pain.  Doc. 92-13 at 2.  Dr. Brown also informed Mrs. Crowe that she had

pelvic inflammatory disease and pelvic inflammation and recommended that she undergo a hysterectomy. On September 27, 2012, Mrs. Crowe presented to Dr. Brown's office with complaints of pelvic pain and adhesions. Dr. Brown noted that "pt here for pre op laparoscopic Supra Cervical Hysterectomy, Revision of Anterior Prolift." Doc. 91-21 at 2. Accordingly, on October 8, 2012, Dr. Brown performed the following surgical procedures on Mrs. Crowe: 1) Laparoscopic supracervical hysterectomy; 2) Bilateral salpingo-oophorectomy (a surgery to remove the fallopian tubes and ovaries); and 3) Cystoscopy with release of left deep anterior arm of the anterior Prolift. Doc. 91-23 at 2. According to the operative report, under "Description of Procedure" it states the anterior arm of the Prolift was completely cut, and under "Indications for Surgery" further states Mrs. Crowe had been continuing conservative management over the last year or so and that Dr. Brown discussed options in detail, and though not sure that the mesh is the etiology of Mrs. Crowe's pain, she wished to proceed. *Id.* at 2-3. According to Dr. Brown, when mesh becomes tight in a certain area, that does not necessarily indicate there's a problem with the actual mesh itself and does not indicate that the mesh became tight because of anything directly related to the mesh itself or any properties of the mesh. Doc. 92-2 at 16. There can be several factors that can influence whether or not the mesh becomes tighter, including if a patient has a vaginal atrophy. *Id.* Furthermore, Dr. Brown states that some contracture of the mesh over time is expected. On November 15, 2012, Mrs. Crowe returned to Dr. Brown's office for her post-operative evaluation. Mrs. Crowe complained of vaginal tenderness and Dr. Brown did not note any abnormalities following an examination. In the "Disposition" section of the record for this visit, Dr. Brown noted that Mrs. Crowe's MRI showed encasement of the left anterior S1 nerve root. Doc. 92-15 at 3.

On February 28, 2014, Mrs. Crowe visited Dr. Douglas Pahl at the Hughston Clinic and reported predominant left leg pain and back pain which she experienced for about four years and described as being radiating. Doc. 92-16 at 4. After reviewing the X-rays with Mrs. Crowe and Mr. Crowe, Dr. Pahl recommended a selective nerve root block and if that did not work that she consider undergoing lumbar fusion surgery. *Id.* at 6. Mrs. Crowe continued to experience leg and back pain. In July 2014, after discussing her symptoms and the findings on her MRI and discogram with Dr. Fredy Martinez, Mrs. Crowe decided to proceed with the spinal fusion surgery. Doc. 92-17 at 6. On August 29, 2014, Mrs. Crowe underwent lumbar fusion surgery performed by Dr. Pahl at Northside Medical Center in Columbus, GA. Doc. 92-18. After the surgery Mrs. Crowe continued to experience low back pain and left leg pain. On February 24, 2015, Mrs. Crowe reported that she was still experiencing the same pain she was having prior to the operation— predominant left sided pelvic pressure extending from the groin area to the greater sciatic notch region. She did not report experiencing any back pain at this time. Doc. 92-19 at 4-5. On March 17, 2015, Mrs. Crowe returned to Hughston Clinic and was evaluated by Dr. Martinez who informed her that she probably had an issue that was related to her pelvis and no longer related to her lumbar spine. Doc. 92-20 at 6.

On April 16, 2015, Mrs. Crowe visited Dr. Niall Galloway at the Emory Clinic in Atlanta, Georgia and reported vaginal and pelvic pain which was persistently worsening. Doc. 92-21. During Mrs. Crowe's pelvic exam, Dr. Galloway noted she demonstrates a right paravaginal detachment, her bladder neck appears fixed, and she does not have evidence of cystocele. She was scheduled to return to the Emory Clinic for a cystoscopy to evaluate for any anatomic causes of her urinary incontinence as well as for any evidence of eroded mesh. *Id.* at 3. On April 21, 2015, Mrs. Crowe returned to the Emory Clinic for a cystoscopy, the findings of which were: 1) urethral

length 3 cm; 2) no PVD's; 3) no evidence of mesh exposure.  Dr. Galloway also performed a pelvic examination during this visit which revealed "significant point tenderness along several portions of her mesh." Doc. 92-22 at 3.  Consequently, plans were made for Mrs. Crowe to undergo surgery for excision of vaginal mesh.  On June 1, 2015, Mrs. Crowe underwent surgery performed by Dr. Galloway and Dr. Samuel David (resident surgeon) at Emory University Hospital.  Doc. 92-23 at 2.

**B.      Procedural Background**

On August 20, 2015, Plaintiffs originally filed suit against Defendants in the United States District Court for the District of New Jersey.  Doc. 1.  The case was subsequently transferred on September 4, 2015, to the United States District Court for the Southern District of West Virginia to the *In Re: Ethicon, Inc.* 2:12 MDL-2327 ("MDL").  Doc. 4.  On October 19, 2020, the case was remanded back to the District of New Jersey and reopened on November 2, 2020.  Docs. 5, 6.  On February 19, 2021, Defendants filed a Motion to Transfer Venue from the District of New Jersey to this Court pursuant to 28 U.S.C. § 1404(a).  Doc. 28.  Over Plaintiff's objection, the District of New Jersey granted the motion to transfer on April 26, 2021.  Doc. 40.  On July 13, 2021, Defendants filed a motion for summary judgment and brief in support. Docs. 62, 63.  On July 14, 2021, Plaintiffs filed a response in opposition to Defendants' motion for summary judgment.  Doc. 71.  On July 20, 2021, Defendants filed a motion for leave to file a *Supplemental Motion for Summary Judgment*.  Doc. 76.  The Court ordered the Plaintiffs to show cause why the motion should not be granted.  Doc. 77.  On July 30, 2021, Plaintiffs filed a response in opposition to the motion on July 30, 2021, and Defendants filed a reply on August 4, 2021.  Docs. 78, 79.  The Court held a hearing for the motion for leave (Doc. 76) on October 28, 2021. Defendants filed Notice of Supplemental Authority on November 3, 2021.  Doc. 84.  The Court granted Defendant's motion

for leave on November 23, 2021. Doc. 88. Defendants filed its motion for summary judgment and brief in support on December 9, 2021. Docs. 90, 91. Plaintiffs filed a response in opposition on January 10, 2022. Doc. 92. Defendants filed a reply on January 25, 2022, and Plaintiffs filed a surreply on January 28, 2022. Doc. 98. The motions are ripe for adjudication. As the latter filed motion pertains to a statute of limitations issue, the Court already determined that it would be appropriate to address it first.[3]  However, the Court must also note some matters regarding Plaintiffs' claims before turning to the substance of the statute of limitations motion.

In the Amended Short Form Complaint provided by the MDL which summarizes in short for the Master MDL complaint, the Court notes that all 18 boxes are checked and some count numbers are different than the original complaint (see, e.g. Count III negligence from original complaint is Count I in the Master Complaint as listed in the short form complaint.). Regardless, the claims are essentially the same.

Additionally, Plaintiffs note they no longer intend to pursue several claims, so the Court omitted them from the list above. These include manufacturing defect claims (Doc. 71 at 4, PageID #871, Doc. 92 at 28, PageID #2031), Negligent Infliction of Emotional Distress (Doc, 71 at 21, PageID #887), Unjust Enrichment and Consumer Protection Claims (*Id*.), and Breach of Warranty Claims (*Id*.). Therefore, Plaintiffs' remaining claims include the following for resolution by the current motions for summary judgment:

- Count I: strict liability – product liability act – defective design

---

[3] The original motion for summary judgment that was filed in the MDL along with several expert witness challenges which were transferred here for resolution. Yet, as discussed in the Court's prior order, the statute of limitations issue is one that is clearly dispositive and should be addressed before any other issues. *See* Doc. 89. However, the Court did review the additional motions to incorporate any admissions or agreements as to certain legal issues to provide a full and complete view of legal claims.

- Count II: strict liability – product liability act – failure to warn

- Count III: negligence

- Count IV: common law fraud

- Count V: constructive fraud

- Count VI: negligent misrepresentation

- Count XI: gross negligence

- Count XIII: punitive damages

- Count XIV: loss of consortium

### III.   STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "[T]he substantive law will identify which facts are material." *Id*. at 248, 106 S. Ct. at 2510. At the summary judgment stage, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id*. at 249, 106 S. Ct. at 2511. The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Mize v. Jefferson City Bd. of Educ*., 93 F.3d 739, 742 (11th Cir. 1996) (citing *Hairston v. Gainesville Sun Publ'g Co*., 9 F.3d 913, 918 (11th Cir. 1993)). For factual issues to be considered genuine, they

must have a real basis in the record.  *Id.*

The party asking for summary judgment bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23, 106 S. Ct. at 2252.  A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1).  The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial.  *Clemons v. Dougherty Cnty.*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotations omitted) (citing *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553).  The court must view facts and draw all reasonable inferences in favor of the non-moving party.  *Moore v. Reese*, 637 F.3d 1220, 1231 (11th Cir. 2011) (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043

(11th Cir. 2007)). However, to avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likely insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990).

### IV.   DISCUSSION AND ANALYSIS

Defendants move this Court to enter summary judgment in its favor because Plaintiffs' claims are allegedly time-barred by the applicable statute of limitations. Defendants' motion and supporting brief compel the Court to consider several correlated issues. Since this case was transferred to this Court, the threshold issue involves determining the proper choice of law analysis to apply. Next, the Court will use the proper choice of law to determine: (1) whether Alabama's statute of limitations or New Jersey's statute of limitations govern Plaintiffs' claims, and (2) whether Plaintiffs' claims are time-barred in light of the applicable statute of limitations. Defendants argue that Alabama's statute of limitations apply, whereas Plaintiffs argue that New Jersey's statute of limitations apply. The Court will discuss each issue in turn.

### A.   Choice of Law

When a case is transferred pursuant to 28 U.S.C. § 1404(a), it is well settled that courts routinely apply the choice of law rules of the state from which the case was transferred. *See, e.g., Ferens v. John Deere Co.,* 494 U.S. 516, 523, 110 S. Ct. 1274, 1279, 108 L. Ed. 2d 443 (1990); *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 243 n. 8, 102 S. Ct. 252, 259 n. 8, 70 L. Ed. 2d 419 (1981); *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S. Ct. 805, 821, 11 L. Ed. 2d 945 (1964);

*James Ventures, L.P. ex rel. Alpert v. Timco Aviation Servs, Inc.*, 315 F. App'x 885, 888 (11th Cir. Feb. 27, 2009)[4]; *Roofing & Sheet Metal Serv., Inc. v. La Quinta Motor Inc.*, 689 F.2d 982, 991 (11th Cir. 1982).  Here, the New Jersey Court is the transferer court and this Court is the transferee court.  Accordingly, this Court must apply New Jersey's state law because it is the law that would have been applied if there had been no change of venue.  *See Van Dusen*, 376 U.S. at 641, 84 S. Ct. at 821.

Plaintiffs contend that the New Jersey Supreme Court case, *McCarrell v. Hoffman-LaRoche, Inc.,* 227 N.J. 569, 153 A.3d 207, 215 (N.J. 2017), outlines the applicable choice of law analysis that this Court should follow.  Doc. 92 at 22.  Pursuant to this analysis, Plaintiffs argue that this Court must apply New Jersey's statute of limitations.  *Id*.  Contrary to Plaintiffs' position, Defendants argue that Plaintiffs' argument is premised on an incorrect assumption.  Defendants contend that "[a]lthough the *McCarrell* established a new choice of law test for the statute of limitations, it does not apply retroactively (i.e., to cases filed before the date it was issued on January 24, 2017)."  Doc. 95 at 6.  Defendants reason that because this case was filed in 2015, the *McCarrell* decision does not apply; instead, the "most significant relationship" test set forth in *P.V. ex rel. T.V. v. Camp Jaycee*, is the proper standard.  In their Sur-reply, Plaintiffs note that Defendants base their position on a sole unpublished opinion from a similar matter that ruled on Defendants' ten motions seeking dismissal of the plaintiffs' claims pursuant to the New Jersey statute of limitations. Doc. 98 at 1-2 ("In support of this argument, Defendants can only cite one unpublished opinion.").  Plaintiffs argue "[n]umerous state and federal courts have followed the

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

framework from *McCarrell* to resolve statute of limitations conflicts for lawsuits filed prior to January 24, 2017." Doc. 98 at 2. To support this argument Plaintiffs, cite to a collection of cases.[5] The Court notes that only one of the cases cited by Plaintiffs was decided after the unpublished opinion that Defendants cite. The rest of the cases precede the date of the unpublished opinion cited by Defendants.

Within the Eleventh Circuit, our sister court in the Southern District of Florida has followed the *McCarrell* decision, and this Court is inclined to do the same. *See Doe v. Chiquita Brands Int'l, Inc. (In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.)*, Civ. Act. No. 08-MD-01916-KAM; 20-60831-CIV-MARRA, 2020 WL 7388944, *6, 2020 U.S. Dist. LEXIS 183140, *83 (Sept. 30, 2020 N.J. Action).

In short, the issue before the New Jersey Supreme Court in *McCarrell* was: what are the choice of law rules in determining the applicable statute of limitations in a tort action? *McCarrell*, 227 N.J. 569, 153 A.3d 207, 215. Pursuant to *McCarrell*, New Jersey's choice of law analysis is a two-step process. *Id*., 153 A.3d at 216. The first inquiry is whether the laws of the states with interests in the litigation are in conflict. *Id*. If the application of the forum state's and another state's statute of limitations results in the same outcome, no conflict exists and the forum state's

---

[5] *See, e.g., Fairfax Fin. Holdings Ltd. v. S.A.C. Cap. Mgmt., LLC*, 160 A.3d 44, 53, 59-62 (N.J. Super. Ct. App. Div. Apr. 27, 2017) ("the test described in *McCarrell* requires application of our own statute of limitations"); *Brecke v. Hoffman-LaRoche Inc.*, Civ. Act. No. A-14T4, 2018 WL 619729, *5 n.2, 2018 N.J. Super. Unpub. LEXIS 226, *9 n.2 (N.J. Super. Ct. App. Div. Jan. 30, 2018); *MTK Food Servs., Inc. v. Sirius America Ins. Co.*, 189 A. 3d. 914, 917-20 (N.J. Super. Ct. App. Div. June 29, 2018); *Berkley Risk Sols., LLC v. Indus. Re-Int'l., Inc.*, Civ. Act. No. A-2366-15T1, 2017 WL 4159170, *7, 2017 N.J. Super. Unpub. LEXIS 2382, *19 (N.J. Super. Ct. App. Div. Sept. 20, 2017) ("any past uncertainty about the test applicable to a statute of limitations conflict between two jurisdictions evaporated with the illumination provided in *McCarrell*, and accordingly, we apply that test here") (internal quotation marks omitted); *Wiebel v. Morris, Downing & Sherred, LLP*, Civ. Act. No. A-4067-16T2, 2018 WL 6369453, *7, 2018 N.J. Super. Unpub. LEXIS 2673, *21 (N.J. Super. Ct. App. Div. Dec. 6, 2018); *Crespo v. Merck & Co., Inc.*, 2020 WL 5369045, *4-5, 2020 U.S. Dist. LEXIS 163524, *67-69 (E.D.N.Y. Sept. 8, 2020).

law governs. *Id.* A "true conflict" exists when a complaint is timely filed within one state's statute of limitations but is filed outside of another's statute of limitations. *Id.* When a true conflict is present, the Court must determine under the appropriate choice of law rule, which jurisdiction's statute governs. In *McCarrell,* the New Jersey Supreme Court expressly adopted section 142 of the Restatement (Second) of Conflict of Laws ("Second Restatement"). The Second Restatement states:

> Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6. In general, unless the exceptional circumstances of the case make such a result unreasonable:
>
> (1) The forum will apply its own statute of limitations barring the claim.
>
> (2) The forum will apply its own statute of limitations permitting the claim unless:
>
> > (a) Maintenance of the claim would serve no substantial interest of the forum; and
> > (b) The claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

*Restatement (Second),* § 142.

Plaintiffs explain that under section 142(2)(a), the statute of limitations of the forum state generally applies whenever that state has a "substantial interest" in the maintenance of the claim. Doc. 92 at 26; *McCarrell*, 153 A.3d at 221. That is the end of the statute of limitations inquiry, unless exceptional circumstances would render that result unreasonable. *McCarrell*, 153 A.3d at 221. When the forum state has no substantial interest in the maintenance of the claim, the court will consider whether the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence. *See* Second Restatement § 142(2)(b).

## B.   Statute of Limitations

The Court acknowledges that there is a distinction between Alabama's and New Jersey's

statute of limitations laws on the various counts at issue

In the original summary judgment briefing, Plaintiff acknowledged that their product liability claims are governed by the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD").  *See* Doc. 71 at 4, PageID #871; *see also* Doc. 92 at 28, PageID #2032.

In Alabama, personal injury claims are subject to a two-year statute of limitations.  *See* ALA. CODE § 6-2-38(*l*) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."). This includes claims for negligence, gross negligence, product liability (Alabama Extended Manufacturer's Liability Doctrine – AEMLD), fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and loss of consortium.  *See e.g., Ex parte Capstone Bldg. Corp.*, 96 So. 3d 77, 86 (Ala. 2012) (negligence, gross negligence and wantonness);[6] *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 112 (Ala. 2003) (AEMLD claims); *Parsons Steel, Inc. v. Beasley*, 522 So. 2d 253, 256 (Ala. 1988) (claims based on fraud or deceit); *Reed v. Stempien*, 475 So. 2d 841, 842 (Ala. 1985) (applying same limitations period to derivative loss of consortium claim and claim from which it was derived);

Pursuant to Alabama law, a cause of action accrues when there has been a manifest, present injury with observable signs or symptoms that are medically identifiable.  *See* Ala. Code. § 6-2-30(a); *Griffin v. Unocal Corp.*, 990 So. 2d 291, 310 (Ala. 2008).  Therefore, it begins to run "when

---

[6]  While gross negligence is not specifically mentioned, Alabama law treats gross negligence the same as negligence.  *See, e.g., Miller v. Bailey*, 60 So.3d 857, 867 (Ala. 2010) ("Gross negligence is negligence, not wantonness.") (citations omitted); *Fidelity-Phenix Fire Ins. Co. v. Lawler*, 38 Ala. App. 245, 81 So.2d 908, 912 (Ala. App. 1955) ("the rule laid down by our courts is that the word gross when used in connection with negligence, implies nothing more than negligence") (citations and internal quotation marks omitted); *Craft v. Triumph Logistics, Inc.*, 107 F. Supp.3d 1218 (M.D. Ala. 2015) ("Under Alabama law, gross negligence is a degree of negligence; it is not the same as wantonness.").  Therefore, the Court does not distinguish between the two here.

there has occurred a manifest, present injury" which "designates a condition that has evidenced itself sufficiently that its existence is objectively evident and apparent, even if only to the diagnostic skills of a physician." *Griffin*, 990 So.2d at 311; *see also, Turner v. Ethicon,* Civ. Act. No. 1:20-cv-876-ACA, 2020 WL 4346784, at * 3, 2020 U.S. Dist. LEXIS 133915, * 6 (N.D. Ala. July 29, 2020) (quoting *Griffin*); *Newton v. Ethicon, Inc.*, Civ. Act. No. 3:20-cv-021-ALB-JTA, 2020 WL 1802927, at *2, 2020 U.S. Dist. LEXIS 61735, at *5 (M.D. Ala. Apr. 8, 2020) (same). One exception is in cases of fraud or deceit.  While the two-year statute of limitations applies, a fraud claim does not accrue "until the discovery by the aggrieved party of the fact constituting the fraud." ALA. CODE § 6-2-3; *see also Dickenson v. Land Dev. Constr. Co.*, 882 So. 2d 291, 298 (Ala. 2003) (citing § 6-2-3 and applicability of the "discovery rule" in fraud claims). Ala. Code § 6-2-3 also tolls the statute of limitations for causes of action that were fraudulently concealed from the aggrieved party.  *DGB, LLC v. Hinds*, 55 So. 3d 218, 224 (Ala. 2010).  But, to toll the limitations period for a cause of action under § 6-2-3 (the savings clause), a plaintiff must allege (1) "the time and circumstances of the discovery of the cause of action," (2) "the facts or circumstances by which the defendants concealed the cause of action or injury," and (3) "what prevented the plaintiff from discovering the facts surrounding the injury."  *Id.* at 226 (citations omitted).

In New Jersey, the state has adopted a two-year statute of limitations for personal injury and product liability claims.  N.J. Stat. Ann. §2A: 14-2.  "To avoid the harsh effect of a mechanical application of statute of limitations" the New Jersey Supreme Court has "adopted the discovery rule."  *Szczuvelek v. Harborside Healthcare Woods Edge*, 865 A. 2d 636, 630 (N.J. 2005).  "The discovery rule is essentially a rule of equity."  *Id.*  (citing *Lopez v. Swyer,* 62 N.J. 267, 273, 300 A.2d 563 (1973)).  The discovery rule "provides that in an appropriate case a cause of action will

be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he [or she] may have a basis for an actionable claim." *Id.*

Specifically, the key distinction is that Alabama statute of limitations begin to run when the plaintiff experiences a manifest present injury, whereas New Jersey statute of limitations begins to run when the injured party discovers a basis for an actionable claim.  However, in the case at hand, ultimately this is a distinction without a difference as the Court finds that there is not a true conflict between the two states' laws because Plaintiffs' claims are time barred under both.  As discussed in *McCarrell,* for there to be a true conflict, the choice between the statute of limitations must be outcome determinative.  *McCarrell*, 153 A.3d at 221.  Here, as the Court finds that application of Alabama and New Jersey's statute of limitations results in the same outcome, no conflict exists and the forum state's law governs.  The forum state is Alabama.  The Court will address in detail below its determination.

Under New Jersey's statute of limitations, Plaintiffs' claims are time-barred and due to be dismissed because in New Jersey a claim accrues when the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that she may have a basis for an actionable claim.  *See Tilly v. Ethicon, Inc.*, Civ. Act. No. 20-2582, 2020 WL 5369724, at * 5, 2020 U.S. Dist. LEXIS 163155, *14 (E.D. Pa. Sept. 8, 2020) (noting that minimal diligence would have discovered that in 2008, the Food and Drug Administration issued a Public Health Notification concerning the complications (including pain and recurrence) associated with transvaginal mesh implants for pelvic organ prolapse and stress urinary incontinence).  Defendants include these Public Health Notifications in support of their reply brief.  *See* Docs. 95-3; 95-4. More importantly, on November 9, 2011, Plaintiff specifically asked Dr. Brown for the name of

the manufacturer of the mesh and if her TVT-O was causing her vaginal pain, groin pain, and stomach pain. Doc. 91-18 at 2. On May 24, 2012, Mrs. Crowe visited Dr. Brown concerning her continued lower abdominal pain which she stated, "the severity of pain is 10 out of 10." Doc. 91-19 at 2. On May 24, 2012, Mrs. Crowe asked Dr. Brown, "Does the mesh have anything to do with her pain and what if you release it? [D]oes it have metal in it?" Doc. 91-19 at 2. Despite these concerns, Plaintiffs did not file this action until August 20, 2015, well after reasonable diligence would have discovered the 2008 FDA Public Health Notification. Furthermore, minimal diligence would have also discovered that by 2012, thousands of plaintiffs were filing lawsuits against pelvic mesh manufacturers (including the Defendants). *Tilly,* 2020 WL 5369724, at * 5, 2020 U.S. Dist. LEXIS 163155, at *14. Moreover, even in 2011 and 2012, Mrs. Crowe was asking her doctor if the mesh could be what is causing her pain and inquired about the specific manufacturer. Therefore, Plaintiffs' claims are time-barred even under New Jersey's discovery rule as "by an exercise of reasonable diligence and intelligence" Mrs. Crowe should have discovered that she may have a basis for an actionable claim in 2011 or at the latest 2012 when she had surgery to release the mesh which means her claim would have expired in 2014 – well before her August 20, 2015 complaint was filed.

Therefore, under Alabama's manifest present injury analysis and New Jersey's discovery analysis, Plaintiffs' claims were brought after the statute of limitations period ended. Therefore, as there is no actual conflict, Alabama law controls in this case.

Pursuant to Alabama's two-year statute of limitations, if Plaintiffs' claims accrued at any point before August 20, 2013 (*i.e.*, two years before they filed suit), those claims are time-barred. *See Turner,* 2020 WL 4346784, at *4, 2020 U.S. Dist. LEXIS 133915, *8 (N.D. Ala. July 29, 2020) (holding that Plaintiff's claims were time barred by the statute of limitations because

Plaintiff did not file her lawsuit until eleven or twelve years after first experiencing pain); *Newton*, 2020 WL 1802927, at \*2, 2020 U.S. Dist. LEXIS 61735, at \*5 (holding that Plaintiff's case was "well outside of Alabama's two-year statute of limitations."). Here, Mrs. Crowe was implanted with Defendants' pelvic mesh devices on July 17, 2007. Doc. 1 at ¶ 13. Construing the facts in the light most favorable to Mrs. Crowe, the undisputed facts before the Court establish that her claims accrued when Mrs. Crowe began experiencing injuries such as pelvic pain in 2010. Pursuant to Alabama's statute of limitations, Plaintiffs' claims accrued in 2010 when Mrs. Crowe began to experience pelvic pain because it is a manifest, present injury with observable signs or symptoms that are medically identifiable. *See* ALA. CODE § 6-2-38(*l*); *Griffin*, 990 So. 2d at 310. (Ala. 2008). Further, with regard to the fraud-type claims, Plaintiff has adduced no evidence that she did not know that she had suffered an injury, that Defendants concealed her cause of action, or that she could not have discovered the cause of action absent Defendants' fraud. Therefore, she cannot state that the savings clause would toll the limitations on her claims. Accordingly, since this case was filed August 20, 2015 and the claims accrued in 2010, the Court finds that Plaintiffs' claims are barred because Alabama's statute of limitations has run.

Thus, the Court finds that Plaintiffs' claims are time-barred by Alabama's two-year statute of limitations and are therefore due to be dismissed as a matter of law.

Additionally, Mr. Crowe's claim for loss of consortium (Count XIV) need not be discussed separately and is due to be dismissed as a matter of law because it is a derivative claim from Ms. Crowe's claims. *See Dale v. Kelly,* 620 So. 2d 632, 632 n.1 (Ala. 1993); *Reed v. Stempien,* 475 So. 2d 841, 842 (Ala. 1985); *Campbell v. Brown & Williamson Tobacco Corp*., Civ. Act. No. 02-0184-KD-C, 2006 WL 8437669, at \*2[7] (S.D. Ala. May 17, 2006) ("[W]hen an injured spouse's

---

[7] Citation unavailable on Lexis+.

claim is barred by the applicable statute of limitations for the underlying injury, the spouse is prevented from recovering for a loss of consortium claim….").

Therefore, summary judgment is due for the Defendants.

## V.   CONCLUSION

Based on the foregoing discussion and analysis, Defendants' motion for summary judgment (Doc. 90) is **GRANTED.**  The Court enters a judgment as a matter of law in favor of Defendants and against Plaintiffs on all the claims.   Accordingly, Plaintiffs' claims are **DISMISSED with prejudice**.  All remaining motions are **DENIED as moot**.

The Court will issue a final judgment separately pursuant to Fed. R. Civ. P. 58.

**DONE** and **ORDERED** this the 15th day of June 2022.

         s/Terry F. Moorer              
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE